Last case for this morning to be orally argued is 2010-7081 PADGETT v. DVA Mr. Chomsky, whenever you're ready. Is that pronounced correctly, Mr. Chomsky? I'm sorry. Chomsky? Correct. Exactly right. Thank you very much, Your Honor, and may it please the Court. This case is a bit of an unusual one where the Equal Access to Justice Act is concerned. It's been here before. It has been here before, and there's a lot of water under this bridge, both in this Court and elsewhere. And as a result of that, we are in this sort of unusual posture in that the government has affirmatively conceded that Barney Padgett was a prevailing party. It also doesn't contest that its position was not substantially justified. And so the only question that remains on this appeal is whether certain attorney's fees that were incurred in the course of proceedings, without which Mr. Padgett would not have been the prevailing party, including the proceedings in this Court to which you refer, Judge Gallarza, are somehow or for some reason excluded from compensation under EJA or somehow under the Veterans Benefits Act. And nothing in either statute requires such a result. Accordingly, the decision below should be vacated and the case remanded for further calculation of attorney's fees. What's the specific order on remand that you would ask for? The specific order would be to vacate the portion of the decision below that excluded attorney's fees and costs that were incurred after Mr. Padgett's death and a remand for reconsideration under the reasonableness standard. Is it obvious on the face of the record which fees go to which items? Most of it is reasonably clear, Your Honor. The vast majority of the fees that are in the EJA application, and that is in the joint appendix. It's at 920, I believe. Most of those relate to the further appellate proceedings, both in the Veterans Court, subsequently in this Court, back in the Veterans Court again, and then some of them relate to the EJA application itself. But they are pretty clear itemized. It is a clearly itemized request for fees. I mean, is there a stipulation that if there were an award that certain fees would fall in one bucket and certain fees would fall in the other? No, there's not a stipulation along those lines, Your Honor. And the Veterans Court didn't undertake any analysis of whether certain fees related to Mrs. Padgett's derivative accrued benefits claim or whether certain of them were properly attributable to Mr. Padgett's own underlying claim for benefits. And that's precisely the problem under Hensley, which is sort of the second point we make in our briefs. The Supreme Court has said that the relevant inquiry is whether fees are separable or not, and when they are not separable, then they are compensable. And without that kind of analysis having occurred here, that in and of itself is a legal error that this Court has jurisdiction to consider and that merits vacater and remand for reconsideration under the Hensley test. I'd like to circle back around to the decision below. It is somewhat cryptic and quite brief in relevant respect. The language of it that is most directly relevant is at page 8 of the Joint Appendix. It's a single sentence. And the reasoning of the Veterans Court seems to have been something along the lines of the following. A veteran's claim for benefits dies when the veteran dies. Mr. Padgett was dead. Ergo, no attorney's fees after his death are compensable. And the fundamental problem with that analysis is that it misunderstands not only the Veterans Benefits Act, but indeed this Court's prior holding in this very case. The very purpose of the prior appeal in 2007 was to consider Mr. Padgett's own claim, what its status was, and whether the judgment that he had obtained could be reentered non pro ton. That flies directly in the face of the Veterans Court's reasoning here that when a veteran has died, there can be no further litigation on the veteran's claim for benefits. This Court recognized as much in the subsequent Phillips decision in which it interpreted, again, the earlier decision in Padgett. And indeed, the Veterans Court itself in subsequent decisions has recognized that particularly in light of the new congressional enactment, Section 5121 capital A, it is indeed permissible and sometimes necessary, if not altogether common, for accrued benefits claimants or some other representative of the veteran's estate to be litigating on the veteran's underlying claim for benefits after the veteran's death. That's the very purpose of 5121 capital A. Now, that statute by its terms doesn't apply in this case because of its effective date, but what it does teach is that the legal analysis that seems to have underlay the Veterans Court's ruling is wrong as a matter of law. If the Court doesn't have any other questions, I'll reserve the balance of my time. Thank you. May I please report? 1521 capital A, the newly passed legislation, specifically refers to accrued benefits claimants. The whole reason this Court in Padgett and subsequently in Phillips allowed the litigation to continue is because the Court determined that the accrued benefits claimants in those cases had standing to protect an adverse effect that was in existence procedurally because of the way the Veterans Court's decision, where it was in the process at the time the veteran died. In our understanding, there's no suggestion in those cases that it changed the preexisting precedent of this Court or altered this Court's interpretation of the plain language of 5112, which provides that a veteran's claim dies with him. In Richards, in fact, Mr. Richards' brother, as a representative of the estate, which was not disputed before the Court and made a note by this Court, attempted to continue Mr. Richards' litigation as a representative of the estate. Essentially, by making the argument today that Mrs. Padgett, as representative of her husband's estate, was entitled to continue the litigation beyond his death, Mrs. Padgett makes the same argument that Mr. Richards made in his case. And this Court specifically rejected. And I quote, thus because Louis Richards' claims are wholly derivative of those of the deceased veteran, the dispositive issue is whether the claims of a veteran for service-connected benefits under 38 U.S.C. 1110 survive his or her death. We hold that they do not. Mr. Richards' statutory arguments cannot overcome the clear intent expressed by the structure and language of the statutory scheme at issue, specifically referring to 5112. That a veteran's claim to disability benefits- Mr. Richards' predates Padgett, predates Phillips. What's the point of the substitution that was authorized in Padgett and was authorized in Phillips? To allow the accrued benefits claimant to obtain advantages that she might not otherwise have if she was simply allowed to proceed under the preexisting statutory provision of 5121. This Court specifically said with respect to the non-pro-tunc relief in Padgett, because of the general rule that a veteran's claim for benefits ends with his death, if Mrs. Padgett could not be substituted, non-pro-tunc relief would be inappropriate. Yet that's exactly the basis upon which Mr. Padgett's estate recognized again. In footnote 3 of the reply brief, Mrs. Padgett makes clear she is not here in her own capacity. She was ultimately denied standing when she received her accrued benefits award pursuant to 5121. She recognizes in that footnote that had she proceeded with a claim for attorney's fees on her own behalf, she would ultimately come up against the Supreme Court's decision in Buchanan and this Court's decision in Brickwood, because it's undisputed that the award of her accrued benefits in this case were made pursuant to 5121 and not directly the result of this Court's remand. So her argument is that she substituted for purposes of the attorney's fee award as well as for purposes of the actual award. She made that motion and the court below found she didn't have standing to be substituted for purposes of recovering fees related to her own work, which was the work that was done after her husband's death. We submit there could have been, as the Court said in Padgett, there was no need for non-protunct relief but for the fact that she had an accrued benefits claim. It didn't overrule Richard and it couldn't overrule Richard as a panel decision that said that an estate, representative of an estate, could not continue litigation beyond a veteran's death because the veteran's claim dies with the veteran. In order to award relief in this case, this Court has to overrule Richard because she's here now in her capacity as a representative of her estate trying to seek attorney's fees for work done subsequent to the death of Mr. Padgett. You can't get attorney's fees for work done subsequent to the death of Mr. Padgett if it wasn't for Mr. Padgett's benefit. But he died. And under Richard, his claim died with him. And no representative of the state could ever be substituted to continue that litigation. But under that theory, then, that Padgett's bad law. No. Padgett allowed a judicial—Padgett didn't discuss attorney's fees and Padgett didn't allow substitution of Ms. Padgett as a representative of her estate. Padgett very carefully and particularly allowed Ms. Padgett to continue the litigation because she had her own reason to do so and that was why the Court conducted a standing analysis upon Mrs. Padgett. If the Court was substituting—was allowing as a representative of the estate Mrs. Padgett to continue as a representative of the estate, all they need to do is to determine whether she was a legitimate representative of the estate. But no, this Court went on and analyzed under both Article III of the Constitution and the Veterans Court's own standing statute as to whether or not Ms. Padgett had standing. Otherwise, there's no case for controversy. This Court had said in Zabelkank—I mean, in Zabelkank, it's a great—the Court has a great line about what happens when a veteran dies. After a veteran's death, the claim is no longer one for disability compensation but rather one for accrued benefits. Remember, when a veteran approaches the Veterans Administration, his statutory basis to obtain benefits is usually under one of three statutes—1110, 1131, or 1151. And when he dies under 5112, his claim dies with him. He has no more statutory right to benefits under the VA. But at the time of his death, another statute kicks in, which is 5120. That allows an accrued benefits claimant—often the spouse, but not necessarily. There's a list of folks that are usually considered. Basically, they now have a statutory basis to seek benefits, to which they did have—they had no statutory basis prior to the veteran's death. At that time, it was his rights under 1110, 1131, or 1151. Now, when the veteran dies, the accrued benefits claimant can make a claim under 5121. And that's why this Court looked in Padgett and Phillips and said, well, even though Mr. Padgett died and his claim died with him, Mrs. Padgett had an interest. In that particular case, there was a beneficial decision by the Veterans Court, which under Zellweger and Kink normally would have resulted in a finding that, well, that's not enough to allow her to be substituted. Because under Zellweger and Kink, if the Court recalls, the plaintiffs were also—the opponents were also accrued benefits claimants, also spouses, who also had this argument that they wanted the benefit of—not non-protunctively, but they wanted the Court to allow them to substitute into their existing litigation. The difference that this Court found in Padgett and Phillips—well, Padgett especially—and Zellweger and Kink, which allowed them to allow Mrs. Padgett to continue where they didn't allow Mrs. Zellweger and Kink to continue, was that the unique situation here where the Veterans Court had actually had the case submitted and then issued the order, and in the interim between when it was submitted and when the decision came out, overruling the Board decision, Mr. Padgett died. And in that case, this Court found that there was an interest to be protected. But under your theory, Mr. Padgett couldn't be a prevailing party then because he was dead. He can be under—this Court's decision in Phillips, Mr. Padgett's estate is allowed to seek fees on his behalf for work done on behalf of his claim. And that's what they did here. Up to the time of his death. Up to the time of his death. And those fees were sought before the Veterans Court, and those fees are awarded. They're not at issue here. The Veterans Court awarded those fees that were incurred to Mrs. Padgett as representative of her estate for the work done up to the time of his death. Mr. Hockey, would she have standing to sue for work that she did on behalf of the estate and recover fees for that? That is not, in our mind, at issue here. Outside the context of the veterans' realm, there may be ways that estates can recover fees. But we don't understand how there would be any reason to conduct any litigation after the veteran's death, given 51-12. In other words, even in this case— But he wouldn't have won. He had to. No. He had to have litigation. He had to come up to this Court. Because Ms. Padgett had an interest, not Mr. Padgett. Mr. Padgett had no basis to recover any fees after his death. 51-12 shuts the door. And it shuts the door by saying you're not allowed any payments made up to the last day of the month before you die. So it can be the case that a veteran can have a claim pending at the VA and no award yet made. But he could be entitled to it. Well, allow substitution will allow you to pursue the claim, especially because that's the only way you'd possibly win. And he has to come up to this Court, but nobody gets paid for that? No, no. In this particular case, and this is the conundrum, and it's not necessarily a VA thing, it's Buck Hannon. It's the destruction of the catalyst theory by the Supreme Court and this Court. That's really what prevents Ms. Padgett from getting fees here. And recognizing that, Ms. Padgett has taken an admittedly clever approach in trying to say, and this Court has used to describe the fact that the reality is when the claimant dies and his claim dies, this other statutory basis for relief in the form of the accrued benefits claim arises. But that's a different claim to a different party. And this Court has said over and over again that there are separate claims. So Ms. Padgett had, let's say the Supreme Court doesn't issue Buck Hannon and this Court doesn't issue Brickwick. So the catalyst theory is alive and well. Then what happened in this case would be a very interesting question about the application of the catalyst theory. Ms. Padgett, having prevailed before this Court, and then before she actually got any relief from the judicial avenue that this Court provided for her in Padgett, she was awarded benefits under 5121, little f. Administratively, as we indicated in Padgett, the basis that has always existed for accrued benefits claimants, and for which there is no EJA award attached. So you have the question, was her award under 5121A as a result of her normal participation in the statutorily provided 5121A process, or was it a result of the Secretary reacting to this Court's decision? That's a classic catalyst theory argument. But with Buck Hannon and Brickwick, it's no longer available to claimants. So that's one way she could have gotten her fees in this case, but no longer with Buck Hannon. Another way, hypothetically, had this Court's remand decision resulted in her substitution at the Veterans Court, and then that led to a remand to the Board with a direction to award benefits, then she would have prevailed under her judicial path and may very well have been able to, all other things being, be able to apply for EJA. As a representative of the Association? No, in that case she would be representing herself. She would be for her own benefit. For her own benefit, for all the work done. I mean, that's the thing. The work done after Mr. Padgett's death could only be for her. Otherwise, under this Court's precedent, Zabel, Kink, and Richard, and others, she would never have been allowed to proceed. The only reason she's allowed to proceed is because she has her own accrued benefits claim. And it's her standing that this Court based its decision on in Padgett, not as a representative of her husband's estate. That particular path was foreclosed by Richard, and this Court couldn't overrule it without going en banc. So this Court had to find a way to award her an opportunity to proceed judicially, in addition to the one that was already statutorily authorized. And the concern this Court had, which was, I mean, I argued the case, and so I understand the concern Mr. Padgett had at the time was, as you remember, the status of the case at the time that the Veterans Court vacated its earlier decision that was in favor of Mr. Padgett. The Veterans Court also vacated the Board decision that was the obstacle that Mr. Padgett had challenged to the Veterans Court. So in a way, even with the vacatur, not even in a way, even with the vacatur of the Veterans Court's decision, because that decision also reached back and vacated the Board decision, Mr. Padgett was a prevailing party then. But what happened is the decision that was vacated from the Veterans Court was beneficial with respect to an evidentiary ruling that the Board had made. And Ms. Padgett was concerned that the Board would just make the same mistake again, and then she would be right back at the Veterans Court after fighting for 13 years, her husband fighting for 13 years. She didn't want to have to redo that. And this Court wisely took that into account and said, no, we don't need to do that. We're going to allow her to proceed on a judicial path outside the already existing accrued benefits claim. Because remember, under this Court's decision in Selvakink, which is similar, when the Veterans Court vacates work upon the death of the plaintiff, it reaches back and also vacates the Board decisions to clear the way for the accrued benefits claim. That's the language the Court used. That's what they did in this case. But because of the concern about delay, which was more significant here, because of the potential that the Board could goof it up again, if you will, and require the Veterans Court to look at it, this Court provided her with that avenue of relief. But the whole litigation, everything about that was on behalf of her 5121 claim. I state again, if this Court was allowing that claim to continue beyond the veteran's death, it would not have needed to resort at all to any kind of standing analysis to determine whether Ms. Padgett had a right to continue the claim. And the unfortunate thing for Ms. Padgett in this case, or fortunate thing, I mean, frankly, in a way, the Veterans Administration paid her benefits 12 days, I think, after this Court issued its decision. And whether or not there was a connection between them, certainly she got her benefits in a timely fashion. And it did not materialize the way she was concerned that it would materialize. But unfortunately, because that's how she got her benefits and not through the judicial avenue that this Court made available to her and Padgett, she's not entitled to seek EJF fees in her own right. And she's not, you know, because of the catalyst theory. And she wouldn't have been able to, you know. So that's her problem. That's her conundrum. And so instead, she's tried to broadly construe this Court's holding about why the litigation can continue and tried to extend it to say, well, now actually Mr. Padgett's claim continued. But he didn't. He has no claim. Her award was under 5121 of Title 38 USC, not under 1110, not under 1131, and not under 1151. If it was covered under 5121A as presently enacted, would she be entitled to recover it? No. Well, Ms. Padgett, 5121A, again, and I think I may have already mentioned this, that is tied to accrued benefits claim. In this case, all that would have done would have been, without having resorted to this Court's decision in Padgett, she would have been able to substitute 5121A refers to actions before the VA. So in other words, hypothetically, if- She could have been substituted directly. At the board level or at the regional office level. And questions about EJF then would sort of be, see, it wouldn't be up to the court level. So I don't think you'd even get to the EJF question at that point. Thank you, Mr. Huckabee. Thank you. Mr. Brzezinski. Thank you, Your Honor. Let me try and untangle a couple of different strands here. And I think there are three key issues that deserve attention. First of all, counsel argued that Mrs. Padgett could not be, or in fact was not, substituting on Mr. Padgett's claim. You can read Padgett, and Padgett says Mrs. Padgett was entitled to substitute for Mr. Padgett on the appeal. It was talking about substitution, not intervention. If she wasn't substituting on Mr. Padgett's claim, it's a mystery to me why any of this was being discussed. Second of all, the claim has been made that you can never litigate a veteran's claim after his death. And there are at least four or five different authorities that make clear that that is not correct. First of all, I would submit that Padgett, on its face, Padgett won in 2007, is all about the status and effect of Mr. Padgett's own claim. Nothing in it is in any way inconsistent with Richard. Richard simply says that Mr. Padgett can't be awarded veterans' benefits, but in no way does it foreclose litigation on the veteran's own claim by someone else. And Phillips said that in exactly those words. 581 F. 3rd at 1363, this Court said, discussing the decision in Padgett, we have held that an accrued benefits claimant may be substituted for the deceased veteran claimant on the disability benefits claim in order to protect the accrued benefits claimant's legal interests. But it's absolutely clear that Phillips understood the earlier decision in Padgett in precisely the way I'm advocating. 5121 A says exactly the same thing. It permits an accrued benefits claimant to, quote, file a request to be substituted as the claimant for the purposes of processing the claim, i.e., the veteran's claim, to completion. Was that before the VA or is that at the court level? Well, the Veterans Court has said that 5121 A applies in the VA. Late last year, the Veterans Court, having determined that 5121 A doesn't apply to proceedings in the Veterans Court, issued a decision, which is actually the next thing I was going to get to, in the Breedlove case, which adopts, as a matter of practice in the Veterans Court, exactly the same rule again as Padgett 1 and Phillips and 5121 A. Breedlove says 24 VET App 7 at 19, the statute, quote, expressly recognizes that an accrued benefits claimant in appropriate cases can continue the veteran's claim. 5121 sub A, even before 5121 capital A, did exactly the same thing. And this relates to the in-the-file requirement, which you may be familiar with. I know it comes up with some frequency in this court. And the whole point of this is that an accrued benefits claimant may be awarded benefits that were due and payable to the veteran, in fact, actually had been adjudicated and awarded to the veteran at the time of the veteran's death, or which were, quote, based on evidence in the file at the date of death. 5121 A, even before Padgett and even before 5121 capital A, recognized that there were going to be circumstances in which the accrued benefits claimant was litigating some aspect of the veteran's own underlying claim for benefits, even after the veteran's death. So that was the second point. The third strand in all of this is this question of standing. And it's certainly the case that standing was necessary for Mrs. Padgett to be able to proceed in the earlier appeal. But that doesn't say anything one way or the other about whether she was litigating the underlying claim for benefits. That's just a prerequisite for her going forward. And again, it seems to me that reading this court's prior decision in Padgett, it would be very surprising, I think, to those who litigated the case and to the panel of the court to think that anything was going on in that case other than litigation about Mr. Padgett's underlying claim for benefits. Judge O'Malley, I want to go back to the question that you asked. All of this litigation that occurred for the three or four years between the time that Mr. Padgett died and the point at which the Veterans Court finally, once and for all, reinstated the judgment that he got back in 2005, nunc pro tonc. Without that, he wouldn't have been the prevailing party that the government conceives that he was. It would truly exalt form over substance to think that years of litigation that were necessary for Mr. Padgett to be the prevailing party somehow aren't part and parcel of litigation on his own claim for benefits such that they should be able to be compensated under the Equal Access to Justice Act. If the court has no further questions. Thank you. Case is submitted.